In the Matter of the Estate of LOUIS A. SERVATIUS, Deceased.

Surrogate's Court, Suffolk County, March 11, 1932.

Robert B. Griffing, for the executors.

Carl J. Heyser, for Tatiana Servatius.

Truman, Bassett & Wood, for Lillie A. Judik and Henry L. Kingman.

PELLETREAU, S.   The will of Louis A. Servatius provides, among other things:

"Fourteenth. I give and bequeath all the balance, residue and remainder of my estate of whatsoever nature and wheresoever situated, to my trustees hereinafter named to be held in trust, nevertheless, and to pay the rents, revenue and profits arising therefrom to my cousins, Mrs. Lillie A. Judik, Henry L. Kingman and Mrs. Ingrah Vesey, share and share alike, or to the survivor, until my real estate mortgage which I hold on 219–221 West 104th Street, shall mature; subject, nevertheless, to the following provisions:

"Fifteenth. I give and bequeath to my beloved wife, Latiana Standutson Servatius, the sum of Ten thousand dollars ($10,000.00) in cash, to be paid when my real estate mortgage matures or is disposed of by my executors and trustees.

"Sixteenth. I also give to my said beloved wife, my house and real estate now owned by me and located at Southhold, and better known at Phillip Mansion, together with all the household furniture and fixtures, unless otherwise specified in this will.

"Seventeenth.   I hereby authorize and instruct my executors and trustees hereinafter mentioned to pay over to my said wife, Latiana

Standutson Servatius, the sum of Six Hundred ($600.00) dollars per annum, payable in equal monthly installments, until my said real estate mortgage as mentioned herein is disposed of or matured; that the above provisions for my said wife are in lieu of her dower rights.

" *Eighteenth.* I give and bequeath to my nephew, Eugene di Salignoo, residing at 362 West 20th Street, Borough of Manhattan, City, County and State of New York, the sum of Five hundred dollars ($500.00) in cash.

" *Nineteenth.* I give and bequeath to my good friend, Walter A. Van Ness, of 220 Broadway, Borough of Manhattan, City of New York, the sum of One thousand dollars ($1,000:00) in cash.

" When said mortgage matures, it is my wish and 1 hereby instruct my trustees hereinafter named to pay over and distribute to my said cousins, Mrs. Lillie A. Judik, Henry L. Kingman and Mrs. Ingrah Vesey, or the survivor, all the balance and residue of my entire estate, share and share alike."

The testator intended that his will should dispose of all of his property because he gave all the balance and residue of his entire estate to three cousins or the survivor of them, share and share alike. If, therefore, the 14th subdivision of his will were entirely eliminated, full effect would be given to the wishes of the testator. Also taking into consideration what the testator intended to do was to pay the legacies given under the subsequent provisions of his will, but intended by the 14th provision to make possible a fund from which such legacies might be paid, he realized that until said mortgage could be collected there would be insufficient funds to pay such legacies. While the 14th provision says " until my real estate mortgage shall mature," it is clear that he intended that such legacies should be paid when said real estate mortgage matured or was disposed of, because in the 15th and 17th provisions of his will he expressly says " until my said real estate mortgage as mentioned herein is disposed of or matured."

The testator's will was made April 20, 1929, and in June, 1929, he sold the mortgage and then knew that the trust mentioned in the 14th provision was no longer applicable and that immediate payment would be possible under the subsequent clauses of his will, thus showing that it was not a trust he desired to create or a postponement of the payment of said legacies, and did realize that there would be funds from which to make payment thereof in the ordinary course of administration, otherwise it may well be presumed that he would have changed his will and created a new trust providing for a new method of postponement of payment.

The intention of the testator is further disclosed by the fact that

he made the trust under the 14th clause providing the payment of income until his real estate mortgage should mature, subject to the following provisions of his will. If the 14th clause was subject to the following provisions then the $10,000 payable under the 15th clause to his widow was to be payable when his real estate mortgage was disposed of, and likewise the same provision in the 17th clause. It would, therefore, seem from a perusal of the will itself that the purpose of the testator was merely to provide a fund for the payment of the legacies given in the later provisions of his will and that he desired simply to postpone payment of them until the moneys coming from said mortgage were available.

" The principle is now well settled that the courts lean in favor of the preservation of such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator." (*Matter of Hitchcock,* 222 N. Y. 57, at p. 73, and cases there cited.)

In the *Hitchcock Case* (222 N. Y. 57, at p. 73) the testatrix provided that certain legacies should not be paid until eight years, and other devises before five years, and by a separate paragraph gave her property to her executors in trust to hold until the time had expired for such distribution. The court held that the suspension of the ownership of such legacies and devises for periods of five and eight years and creating a trust for such periods were invalid, but that the devises and legacies were valid and would take effect immediately, and in like manner as if no provision had been made for the postponement of the payment thereof.

In the *Hitchcock* case the property of the testatrix was principally invested in the stock of the Scarsdale Estates, Inc., and if the executors were immediately compelled to sell the stock it might result in serious loss to her estate. She believed that her executors could, with sufficient time, realize more for the stock for the benefit of the legatees. The court said (at p. 73) that while this was commendable, the testatrix failed to put it in legal form, but that the failure of the trust should not affect her testamentary disposition; that it was her intention to have the legacies paid and the residue of her estate divided as in the will provided, and that the trust was collateral to such desire.

The situation in the *Hitchcock* case is very similar to that of Mr. Servatius. His money was largely invested in the mortgage, which would not be due until January 15, 1936, and so he made the payment of the legacies contingent upon its collection or disposition, and the trust was collateral to the express desire of the testator and his intention would be defeated if the 14th provision be held to invalidate the subsequent provisions.

In *Smith* v. *Cheseborough* (176 N. Y. 317) the testator devised property to his executors to pay the income to his wife during her life, but such devise was limited upon further trust that upon her death the residue of the estate be paid over to certain trustees who were directed to found an institution. Later upon the death of his wife the testator executed a codicil directing his executor to invest the income collected by him in securities until the expiration of two years after his decease and then pay over the residue of the estate to the trustees previously named. The court held that the provision directing the executors to hold and invest the principal and income for a definite period of time instead of lives, and providing for an unlawful accumulation of income, did not cause it to follow that the will would fail. The court said that the taking out of the invalid provision for postponement was the only change in the testator's plan and by expunging it from the will partial intestacy would be avoided and the real substances of the will effectuated in its entirety.

In *Kalish* v. *Kalish* (166 N. Y. 368) there was a testamentary direction that upon the death of a life tenant the executors hold the property in trust, collect the income, invest the surplus in real estate and that the estate should not be settled for a period of five years after the death of the life tenant, and thereupon a portion of it was to be held in trust for a daughter and the balance of the estate was to be divided among certain heirs. The court held that the trust for the five-year period was invalid but that the ultimate trust and the remainders were valid because the void intermediate trust could be eliminated from the will without changing the essential features in it. The only part of the will that would fail would be deferring the time of distribution for five years, and in other respects the will would stand as the testator made it and the main features of his testamentary plan be carried out. If the ultimate trust and the remainders dependent upon the void intermediate trust were held void, it would follow that the testator died intestate, which would result in the utter destruction of the testator's plan. The court said (at p. 375) that the rule " is now firmly established in this State, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total as the case may be."

In *Roe* v. *Vingut* (117 N. Y 204, at p. 212) the court says in relation to the construction of wills: " In either event the strict

language used in some portions of the instrument must give way for the purpose of arriving at the meaning of the testatrix based upon a perusal of the whole document. Upon such perusual, if a general scheme can be found to have been intended and provided for in the instrument, and such general scheme is consistent with the rules of law, and so may be declared valid, it is the duty of courts to effectuate the main purpose of the testatrix. To accomplish such object the meaning of words and phrases used in some parts of the will must be diverted from that which would attach to them if standing alone, and they must be compared with other language used in other portions of the instrument, and limitations must be implied, and thus the general meaning of all the language must be arrived at."

Question may be asked whether the bequests after the 14th clause are general or specific legacies, on account of the references to the mortgage held by the deceased. It would appear that all of such legacies are general as no gift is made of specific property and they all refer substantially to the expected payment of such legacies at the time when the mortgage above referred to is sold.

The trust mentioned in the 14th provision of the will did not take effect because the testator made it impossible of operation by disposing of the real estate mortgage which was the basis and foundation of said trust, and the plan and intent of the testator's will can be fully carried out without regard to the 14th subdivision.

The testator intended of course that the 15th to 19th provisions of his will should be operative and he made the 14th clause subject to those from the 15th to the 19th, thus showing that those from the 15th to 19th were uppermost in his mind. Therefore, if the provisions from 15th to 19th are made subject to the 14th provision and a failure of the 14th provision carry with it the subsequent provisions, it would be doing violence to the express intentions of the testator, if the 14th provision were held void. Any trust provision under the 14th clause is incidental to the carrying out of the general provisions of the will, as the 14th provision merely postpones the time of payment of the several legacies until the sale of the real estate mortgage, and if the 14th provision is held void it should not carry the subsequent provisions of the will with it.

The 15th to 19th provisions of the will should be held valid provisions and as the mortgage was disposed of by the testator in his lifetime, the only effect under the 14th clause condition should be to accelerate the payment of the legacies under the subsequent provisions of the will.

Decreed accordingly.